JS-6

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

Case No. 8:23-cv-01324-FWS-ADS

JANE DOE,

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION [22], DENYING MOTION TO STRIKE [34], AND GRANTING MOTION TO SEAL [23]**

                        Plaintiff,

        v.

ROB BONTA et al.,

                        Defendants.

Three motions are pending before the court.  The motion for preliminary injunction (Dkt. 22) seeks declaratory relief and injunctive relief under *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022).  The matter is opposed and fully briefed.  (Dkts. 29, 31.)  The motions to strike (Dkt. 34) and seal (Dkt. 23) are ancillary matters related to record filings submitted in connection with the motion for preliminary injunction.  The motion to seal is unopposed, (Dkt. 28), but Defendant opposes the motion to strike.[1]

Based on the state of the record, as applied to the applicable law, the court **DENIES AS MOOT** the motion for preliminary injunction (Dkt. 22), **DENIES** the motion to strike (Dkt. 34), and **GRANTS** the motion to seal (Dkt. 23).[2]

# I.    Introduction

This case concerns Plaintiff's challenge to California's "good moral character" requirement for the issuance of concealed carry weapon ("CCW") licenses, under California law prior to the amendments recently passed in Senate Bill 2, 2023-2024 Reg. Sess. (Cal. Sept. 26, 2023) (effective Jan. 1, 2024) ("SB 2").  The California Penal Code generally requires an individual to obtain a CCW license from a county sheriff or chief of police to carry a firearm in public.  Cal. Penal Code §§ 26150, 25655; *see also id.* § 25400 (criminalizing carrying a concealed firearm in public absent a license).  Until SB 2 becomes effective on January 1, 2024, the Penal Code

---

[1] As explained further *infra* by the court, Defendant opposed the motion to strike at oral argument.

[2] The court is aware of the preliminary injunctions issued on December 20, 2023, in *May v. Bonta*, Case No. 8:23-cv-1696 (C.D. Cal.) (Dkt. 46) and its companion case *Carralero v. Bonta*, Case No. 8:23-cv-1798 (C.D. Cal.) (Dkt. 42); the court notes these injunctions concern the provisions of SB 2 pertaining to restrictions on carrying firearms in "sensitive places" rather than the licensing requirements at issue in this case, and accordingly do not affect the instant matter, *see generally* Order Granting Preliminary Injunction, *May* (Dkt. 45); Order Granting Preliminary Injunction, *Carralero* (Dkt. 41).  When asked at oral argument, the parties agreed these injunctions do not affect the "focus" of Plaintiff's motion.

requires a CCW applicant to establish that: (1) she is of good moral character, (2) she is a resident of, or has her principal place of employment within, the relevant county, and (3) she has completed a firearm safety training course.  *Id.* §§ 26150(a), 26155(a).  The applicable statutes, by their terms, require a showing that "good cause exists for the issuance of the license," but California has not enforced this requirement following *Bruen*.  (*See* California Department of Justice, Office of the Attorney General, Legal Alert (June 24, 2022) (Dkt. 22-7), at 1-2; Cal. Penal Code §§ 26150(a)(2), 26155(a)(2).  Other related provisions include authorization for licensing authorities to order psychological testing, Cal. Penal Code § 26190, a fingerprinting requirement, *id.* § 26185(a), and a ban on issuing CCW licenses to individuals "prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm," *id.* § 26195(a).  Exceptions permitting individuals to carry a firearm in public without a CCW license include a limited self-defense exception "under circumstances where it would otherwise be lawful" if the individual "reasonably believes that any person or the property of any person is in immediate, grave danger and that the carrying of the weapon is necessary for the preservation of that person or property," *id.* § 26045(a), an exception for persons making or attempting a lawful citizen's arrest, *id.* § 26050, and an exception for individuals engaging in hunting or fishing that have an appropriate license for the activity, *id.* §§ 25640, 26366.

California's SB 2 was signed by Governor Gavin Newsom on September 26, 2023, and as noted, becomes effective on January 1, 2024.  (Dkt. 33, Exh. A (text of SB 2).)  In relevant part, SB 2 removes the "good moral character" and "good cause" requirements from CCW licensing applications.  (*Id.* §§ 10, 11.)  Instead, SB 2 provides that licensing authorities shall issue or renew a CCW license upon proof that the applicant: (1) is not disqualified under Cal. Penal Code § 26202; (2) is over twenty-one years old; (3) resides or principally works in the issuing city or county; (4) has completed a training course described in Cal. Penal Code § 26165; and (5) is the

1   firearm's recorded owner.  (*Id.*)  In turn, Penal Code § 26202, as amended by SB 2,

2   imposes separate criteria that determines whether and individual is "disqualified."  (*Id.*

3   § 21.)  These include whether the applicant is "reasonably likely to be a danger to self,

4   others, or the community at large, as demonstrated by anything in the application for a

5   license or through the investigation . . . or as shown by the results of any

6   psychological assessment," in addition to sustaining certain convictions, violating

7   specified California laws, or "currently abusing controlled substances."  (*Id.*)

8       On February 17, 2023, Plaintiff applied and was rejected for a CCW license

9   with the Orange County Sheriff's Department under the pre-SB 2 framework.  (Dkt.

10  22-2 ¶ 4.)  On July 13, 2023, Plaintiff's application was rejected for failing to meet the

11  good moral character requirement based on failing a psychological examination.[3]  (*Id.*

12  ¶ 5; Dkt. 22-5.)  Plaintiff resubmitted her application to the Orange County Sheriff's

13  Department on August 30, 2023, (Dkt. 19 at 5); however, she has since "voluntarily

14  withdrawn" this application before a decision was rendered on it, (*see* Dkt. 31 at 8).

15      In the motion for preliminary injunction, Plaintiff seeks an order declaring the

16  "good moral character" requirement is unconstitutional under the Second and

17  Fourteenth Amendments, and an order enjoining the Attorney General of California

18  from directing licensing authorities to enforce the "good moral character" requirement

19  for CCW licenses.  (Dkts. 22-9; *see* Dkt. 1 ¶¶ 14-18.).  As a threshold matter, the

20  parties dispute whether the case is mooted by the passage of SB 2.  Defendant argues

21  the court should issue this order and deny the motion for preliminary injunction as

22  moot on the effective date of SB 2 because it eliminates the "good moral character"

23

24  _____

25  [3] California Welfare and Institutions Code § 8103 previously prevented Plaintiff from
    receiving a CCW license after she was placed on an involuntary medical hold
26  following a sexual assault she suffered as a minor.  (Dkt. 22-3 ¶ 2); however, she
    obtained declaratory relief from a California court in 2017 stating she is not subject to
27  § 8103's prohibition on the ownership, control, receipt, possession, or purchase of
    firearms, (Dkt. 22-4).
28

requirement Plaintiff seeks to enjoin, (Dkt. 29 at 6-8); Plaintiff urges the case is not moot because the law is not effective until that date, (Dkt. 22 at 18), and further asserts the passage of SB 2 is a voluntary cessation of Defendant's conduct that Defendant can resume later, (Dkt. 31 at 7-10).  On the merits, the parties dispute whether Plaintiff has shown a likelihood of success on the merits of her claim, which turns on whether her desire to carry a concealed firearm in public is conduct covered by the text of the Second Amendment and the regulations Defendant contends are historically analogous to the "good moral character" requirement pass Constitutional muster under *Bruen*.  (*See* Dkt. 22 at 10-16; Dkt. 29 at 9-19; Dkt. 31 at 10-17.)  They also each assert the remaining preliminary injunction factors favor their case.  (*See* Dkt. 22 at 16-17; Dkt. 29 at 20-22; Dkt. 31 at 16-19.)

Two related motions are also pending before the court.  First, Plaintiff seeks to file certain documents filed in connection with the motion for preliminary injunction under seal to redact her identity and personally identifying information.  (Dkt. 23.) That motion is unopposed.  (Dkt. 28.)  Second, Plaintiff requests the court strike a "notice of supplemental authority" filed by Defendant after Plaintiff's reply brief as violative of the Central District's Local Rules governing briefing on motions.  (Dkt. 34.)  Defendant indicated at oral argument[4] he opposes striking the notice of supplemental authority.

---

[4] Plaintiff's motion to strike was filed on December 11, 2023, after Defendant filed the notice of supplemental authority on December 8, 2023.  (Dkts. 32, 34.)  By that time, Plaintiff had already noticed the motions for preliminary injunction and to seal for hearing on December 21, 2023, (Dkts. 22-23), and Plaintiff also noticed the motion to strike for the same date, (Dkt. 34).  As discussed later in this order, the court notes the motion to strike was filed belatedly for the hearing date noticed, *see* L.R. 6-1, and otherwise does not comply with requirements applicable to *ex parte* matters necessary for decision on an expedited basis, *see* L.R. 7-19.  Nevertheless, considering the discrete nature of the motion to strike and its relation to the pending motion for preliminary injunction, the court will, in its discretion, consider it on its merits as well as the arguments in opposition submitted by Defendant at oral argument.

1  **II.  Initial Matters**

2      A.       Motion to Seal

3          The court turns first to Plaintiff's motion to file under seal.  In it, Plaintiff seeks

4  to file copies of her declaration, a state court order in which she obtained declaratory

5  relief exempting her to certain prohibitions imposed by California Welfare and

6  Institutions Code § 8103, and the denial of her CCW application with her name, email

7  address, date of birth, and signature redacted.  (Dkt. 23.)  Plaintiff's asserts her

8  proposed redactions are warranted to preserve her anonymity as this early stage of the

9  case in light of the undue embarrassment and humiliation she stands to suffer if

10  private information related to her previous sexual assault were released publicly, and

11  because Defendant will suffer no prejudice because he is aware of her identity.  (*Id.* at

12  2-5.)  Defendant does not oppose the motion to seal.  (Dkt. 28.)

13          The court starts with the "strong presumption in favor of access to court

14  records."  *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir.

15  2003) (citations omitted).  Where a party seeks to seal records filed in connection with

16  a "dispositive" motion, or one that is "more than tangentially related to the underlying

17  cause of action," the party must set forth "compelling reasons" to do so.  *See Ctr. for*

18  *Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096-99 (9th Cir. 2016); *see also*

19  *id.* at 1099-1102 (surveying reasons preliminary injunctions often implicate important

20  issues and applying compelling reasons test to motion for one that was "more than

21  tangentially related" to the merits of the case).  The court then "conscientiously

22  balance[s] the competing interests of the public and the party who seeks to keep

23  certain judicial records secret."  *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d

24  1172, 1179 (9th Cir. 2006) (citation and internal quotation marks omitted).  "What

25  constitutes a 'compelling reason' is 'best left to the sound discretion of the trial

26  court.'"  *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d at 1097 (quoting *Nixon*

27  *v. Warner Commc'ns, Inc.*, 435 U.S. 589, 599 (1978)).  "In general, 'compelling

28  reasons' sufficient to outweigh the public's interest in disclosure and justify sealing

1    court records exist when such court files might have become a vehicle for improper
2    purposes, such as the use of records to gratify private spite, promote public scandal,
3    circulate libelous statements, or release trade secrets." *Kamakana*, 447 F.3d at 1179
4    (citations and some internal quotation marks omitted).

5         The court finds the compelling reasons standard is met in this case.  The court
6    previously found Plaintiff satisfactorily demonstrated the factors articulated by the
7    Ninth Circuit in *Does I thru XXIII v. Advanced Textile Corp*., 214 F.3d 1058 (9th Cir.
8    2000) warranted permitting her to proceed anonymously in this case, at least at the
9    outset,[5] and the court finds no indication those circumstances have changed.  As the
10   court previously found, (*see* Dkt. 27 at 3-4), Defendant stands to suffer no prejudice
11   from Plaintiff proceeding anonymously considering he does not oppose the Plaintiff's
12   limited redactions and is aware of her identity.  *See Advanced Textile*, 214 F.3d at
13   1068 (instructing courts to determine the "prejudice at each stage of the proceedings
14   to the opposing party, and whether proceedings may be structured so as to mitigate
15   that prejudice").  Moreover, the court finds it compelling to permit Plaintiff to remain
16   anonymous at this early stage given the embarrassment and humiliation she submits
17   she will suffer, (*see* Dkt. 23 at 4-5), from disclosure of her identity insofar as this case
18   implicates the sexual assault she suffered as a minor, *see Jane Roes 1-2 v. SFBSC*
19   *Mgmt., LLC*, 77 F. Supp. 3d 990, 994 (N.D. Cal. 2015) ("'A plaintiff should be
20   permitted to proceed anonymously in cases where a substantial privacy interest is
21   involved.  *The most compelling situations involve matters which are highly*
22   *sensitive . . . .*'") (quoting *Doe v. Rostker*, 89 F.R.D. 158, 162 (N.D. Cal. 1981)).
23
24
     _____
25   [5] The court previously "balanced against the general presumption that parties'
26   identities are public information . . . (1) the severity of the threatened harm; (2) the
     reasonableness of the anonymous party's fears; and (3) the anonymous party's
27   vulnerability to such retaliation."  *See Doe v. Ayers*, 789 F.3d 944, 945 (9th Cir. 2015)
28   (cleaned up); (Dkt. 27 at 2-4).

In sum, the court previously found Plaintiff met the standard to proceed anonymously at the institution of this case, and the circumstances have not changed such that the court finds it appropriate to require her to disclose her identity.  Because Plaintiff only seeks to redact her identity and personally identifiable information in the records she submits to the court in conjunction with the motion for preliminary injunction, the court finds it appropriate to issue the limiting sealing order she seeks. *See Agent Anonymous v. Gonzalez*, 2016 WL 8999469, at *3 (S.D. Cal. Apr. 8, 2016) (granting motion to file under seal declarations with plaintiff's identity redacted based on balance of relevant factors warranting plaintiff proceeding anonymously). Accordingly, the motion to seal (Dkt. 23) is **GRANTED**.

      B.     <u>Motion to Strike</u>

The court turns next to Plaintiff's motion to strike.  In this motion, Plaintiff contends Defendant filed a notice of supplemental authority without court permission that includes supplemental argument in violation of the Central District's Local Rules regarding briefing on motions.  (Dkt. 34.)  At oral argument, Defendant's counsel indicated Defendant opposes the motion to strike.

With an exception not relevant here, Local Rule 7-9 requires an opposition brief to a motion to be filed "not later than twenty-one (21) days before the date designated for the hearing of the motion."  L.R. 7-9.  Local Rule 7-10 permits a party to file a reply brief to an opposition "not later than fourteen (14) days before the date designated for the hearing of the motion," and further provides that "[a]bsent prior written order of the [c]ourt, the opposing party shall not file a response to [a moving party's] reply."  L.R. 7-10.  The Local Rules further state the court "may decline to consider any memorandum or other document not filed within the deadline set by order or local rule."  L.R. 7-12.

The court agrees with Plaintiff that Defendant's notice of supplemental authority was improperly filed under the Local Rules.  The notice of supplemental authority was submitted after Defendant filed his opposition and Plaintiff filed her

reply, (*see* Dkt. 32), Defendant sought no leave to file a sur-reply, and the Local Rules do not generally authorize a party to file a "notice of supplemental authority" absent leave of court, *see Feltzs v. Cox Commc'ns Cal., LLC*, 2021 WL 3271482, at *1 n.1 (C.D. Cal. June 1, 2021).  While brief—approximately one half-page paragraph in length—Defendant's notice of supplemental authority includes his interpretation of the Second Circuit's holding in *Antonyuk v. Chiumento*, --- F.4th ----, 2023 WL 8518003 (2d Cir. Dec. 8, 2023).  (Dkt. 32.)  Because the notice of supplemental authority addresses the merits of matters related to Plaintiff's motion for preliminary injunction and was filed untimely and without leave of court, it is improper under the Local Rules and the court need not consider it.  *See* L.R. 7-9, 7-10, 7-12.

That said, the motion to strike itself does not comply with the Local Rules governing motion practice in that it was noticed for hearing ten days after its filing, in violation of the twenty-eight day period applicable to regularly noticed motions, *see* L.R. 6-1, and neither purports to be or complies with the requirements governing *ex parte* applications seeking orders outside the court's procedures for regularly noticed motions, *see* L.R. 7-19.  Accordingly, the motion to strike was improper under the Local Rules also.

Nevertheless, the court finds it appropriate to consider the authority cited by Defendant in the filing because it is legal authority that appears relevant to the merits of the motion for preliminary injunction,[6] but will not consider any "supplemental briefing regarding the decision."  *See LightMed Corp. v. Ellex Med. Pty. Ltd.*, 2014 WL 12586075, at *10 n.4 (C.D. Cal. May 20, 2014).  Taking this approach, the court

---

[6] The court notes it ultimately does not reach the merits of the Motion itself, but to the extent doing so was proper, *Antonyuk* addresses the history of the "good moral character" requirement the Motion challenges under *Bruen*.  *See* 2023 WL 8518003 at *21-34.  On a related point, *Antonyuk* is a decision on a consolidated appeal of a district court opinion on which Plaintiff relies in her briefing on the merits of her motion for preliminary injunction.  (*See* Dkt. 22 at 5, 17 (citing district court opinion); Dkt. 31 at 10-11, 17 (same).)

1    finds striking the notice of supplemental authority from the docket unnecessary, and,

2    for the sake of completeness, notes it declines to *sua sponte* strike the motion to strike.

3    *See Christian v. Mattel, Inc.*, 286 F.3d 1118, 1129 (9th Cir. 2002) ("The district court

4    has considerable latitude in managing the parties' motion practice and enforcing local

5    rules that place parameters on briefing.").  Accordingly, the motion to strike is

6    **DENIED**.

7    **III.    Preliminary Injunction**

8        A.        Legal Standard

9        "A preliminary injunction is an extraordinary remedy that may be awarded only

10   if the plaintiff clearly shows entitlement to such relief." *Am. Beverage Ass'n v. City &*

11   *Cnty. of San Francisco*, 916 F.3d 749, 754 (9th Cir. 2019) (en banc) (citing *Winter v.*

12   *Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).  A plaintiff seeking a preliminary

13   injunction must demonstrate "[1] that he is likely to succeed on the merits, [2] that he

14   is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the

15   balance of equities tips in his favor, and [4] that an injunction is in the public interest."

16   *Id.* (quoting *Winter*, 555 U.S. at 20).  "The first factor under *Winter* is the most

17   important," to the extent the court need not consider the remaining three elements

18   where the plaintiff fails to show a likelihood of success on the merits.  *Garcia v.*

19   *Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc).  Where the government is

20   the nonmovant, "the last two *Winter* factors 'merge.'" *Baird v. Bonta*, 81 F.4th 1036,

21   1040 (9th Cir. 2023) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)) (citation

22   omitted).  Courts in the Ninth Circuit "also employ an alternative serious questions

23   standard, also known as the sliding scale variant of the *Winter* standard." *Fraihat v.*

24   *U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (cleaned up).  Under

25   that formulation, "serious questions going to the merits" and a balance of hardships

26   that tips sharply towards the plaintiffs can support issuance of a preliminary

27   injunction, so long as the plaintiffs also show that there is a likelihood of irreparable

28   injury and that the injunction is in the public interest." *Id.* (cleaned up).

B.     Analysis

      1.     *Mootness*

           i.     *Article III Mootness*

As noted, Defendant requests the court issue this order and deny the motion for preliminary injunction as moot on the effective date of SB 2 because its amendments remove the "good moral character" requirement forming the basis of Plaintiff's preliminary injunction motion.  (Dkt. 29 at 6-8.)  Plaintiff disputes this assertion on two principal grounds: (1) SB 2 is not effective until January 1, 2024; and (2) the passage of SB 2 qualifies as a voluntary cessation of allegedly unconstitutional conduct to which Plaintiff remains subject after SB 2's effective date.  (Dkt. 22 at 18; Dkt. 31 at 7-10).

"To qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 67 (1997) (citation and internal quotation marks omitted).  Article III's case or controversy requirement "means that, at all stages of the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant [that is] likely to be redressed by a favorable judicial decision.'"  *See Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 834 (9th Cir. 2014) (quoting *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)); *see also U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) (describing mootness as "the doctrine of standing set in a time frame") (citation and internal quotation marks omitted).  The "central question [for mootness] is whether changes in the circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief."  *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1129 (9th Cir. 2005) (en banc) (citation and internal quotation marks omitted).  Defendant bears the burden of establishing a case is moot.  *See Ctr. For Biological Diversity v. Lohn*, 511 F.3d 960, 963 (9th Cir. 2007).

Defendant refers to the rule that "the repeal, amendment, or expiration of challenged legislation is generally enough to render a case moot and appropriate for dismissal." *See Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1198 (9th Cir. 2019) (en banc) (citing *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 478 (1990) (passage of amendments rendered case moot); *Burke v. Barnes*, 479 U.S. 361, 363 (1987) (expiration of legislation rendered case moot); *Kremens v. Bartley*, 431 U.S. 119, 127-28 (1977) (repeal and replacement of legislation rendered case moot); (*see* Dkt. 29 at 6).  To be sure, this line of authority supports Defendant's argument that, once effective SB 2 would moot Plaintiff's case because it expressly repeals the "good moral character" in favor of separate criteria.  *See Diffenderfer v. Cent. Baptist Church of Miami, Fla., Inc.*, 404 U.S. 412, 415 (1972) (holding as-applied challenge to Florida statute seeking declaratory relief statute was unconstitutional and injunctive relief against its application was "inappropriate now that the statute has been repealed"); *Kremens*, 431 U.S. at 128-129 (passage of new act that "repealed and replaced" the challenged statutes mooted plaintiffs' claims).  But, as Plaintiff notes, SB 2 is not effective until January 1, 2024.  That date is certainly on the horizon—four days from the date of this order—but it is not, strictly speaking, today.[7]

Notably, Plaintiff has withdrawn her pending CCW application.  At oral argument, Defendant submitted that the Orange County Sherriff's department typically processes such applications in two-to-three months, depending on the scheduling of the attendant psychological examination.  Accordingly, it is clear to the court that her application, even if it were refiled immediately after the hearing on this matter, could not be processed until a time after January 1, 2024, as a practical matter,

---

[7] While Defendant requests the court hold the motion for preliminary injunction in abeyance until then, Defendant cites insufficient legal authority supporting that course of conduct in the opposition, (*see* Dkt. 29 at 6-8), and did not specifically identify further authority at oral argument.

1    after SB 2 takes effect.  In these circumstances, the court concludes Plaintiff lacks a

2    sufficient stake in the injunction and declaratory relief she seeks in the motion for

3    preliminary injunction because she the striking down of the "good moral character"

4    requirement will not affect any pending CCW application she has submitted, and that

5    requirement is slated for elimination in four days in any event.  *See Lewis*, 494 U.S. at

6    479 ("[T]he Article III question is not whether the requested [injunctive and

7    declaratory] relief would be nugatory as to the world at large, but whether [the

8    plaintiff] has a stake in that relief . . . .  [T]he mere power to seek is not an indication

9    of the intent to do so, and thus does not establish a particularized, concrete stake that

10   would be affected by our judgment."); *see also North Carolina v. Rice*, 404 U.S. 244,

11   246 (1971) ("[F]ederal courts are without power to decide questions that cannot affect

12   the rights of litigants in the case before them.") (citation omitted).

13           In seeking to avoid mootness, Plaintiff relies on the principle that "[a] private

14   defendant's voluntary cessation of challenged conduct does not necessarily render a

15   case moot because, if the case were dismissed as moot, the defendant would be free to

16   resume the conduct."  *See Chambers*, 941 F.3d at 1198; (Dkt. 31 at 8).  However,

17   courts "treat the voluntary cessation of challenged conduct by government officials

18   with more solicitude than similar action by private parties."  *Chambers*, 941 F.3d at

19   1198 (cleaned up).  Courts therefore "presume that the repeal, amendment, or

20   expiration of legislation will render an action challenging the legislation moot, unless

21   there is a reasonable expectation that the legislative body will reenact the challenged

22   provision or one similar to it."  *Id.* at 1199.

23           Plaintiff's arguments that this exception should apply essentially relate to the

24   asserted importance of protecting the safety of vulnerable citizens and her speculation

25   Defendant will deny a future application she files based on a "moral character

26   determination."  (*See* Dkt. 31 at 8-10.)  The problem with these arguments is Plaintiff

27   identifies no concrete indication from the record that California will reinstitute the

28   "good moral character" requirement as opposed the criteria stated in SB 2.  *See*

*Chambers*, 941 F.3d at 1199 ("[A] determination that such a reasonable expectation exists must be founded in the record . . . , rather than on speculation alone.").  While Plaintiff's counsel indicated at oral argument Plaintiff takes issue with California's retention of the psychological testing requirement, the court finds this concern is too speculative to avoid mootness given the sea change SB 2 is poised to bring in California's CCW licensing regime and because it is not sufficiently tethered to the nigh-vestigial "good moral character" requirement she actually seeks to enjoin.  *See Koppel v. Bonta*, 2023 WL 8457243, at *3 (C.D. Cal. Nov. 16, 2023) ("Once the world welcomes 2024, California will become a 'shall-issue' state.  No longer will there be a 'good cause' or 'good moral character' requirement, and an appeals process will be added.  Anything but similar, SB 2's changes bear directly on Plaintiff's challenge, eliminating the chief offending features of the current CCW licensing regime, and bringing it more closely into line with those cited with approval by the Supreme Court in *Bruen*."), *report and recommendation adopted*, 2023 WL 8455019 (C.D. Cal. Dec. 6, 2023).  Additionally, Defendant represented at oral argument that California would not instruct licensing agencies to enforce requirements of a statute that is no longer inoperative, which includes the "good moral character" requirement once the new year arrives in the coming days.  Accordingly, the court finds there is no reasonable expectation Defendant would reenact the "good moral character" requirement inferable from this record, such that the voluntary cessation exception to mootness should apply.[8]  Thus, the motion for preliminary injunction is moot.  The court notes it joins at least one other court in this District in finding moot a

---

[8] To the extent Plaintiff's argument could be construed as implicating the "capable of reputation, yet evad[ing] review" exception to mootness, the court finds it inapposite because the "exceptional circumstances" in which that doctrine apply are not present here because the imminent effective date of SB-2 defeats a finding Plaintiff has "ma[d]e a reasonable showing that [s]he will again be subjected to the alleged illegality."  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983).

constitutional challenge to California's CCW licensing regime given the alterations to California's CCW licensing scheme SB 2 will impose after January 1, 2024.[9] *See Koppel*, 2023 WL 8457243, at *4 (recommending denial of preliminary injunction challenging California's CCW licensing regime as moot given passage of SB 2 and imminent effective date on November 16, 2023); *Koppel*, 2023 WL 8455019 (adopting recommendation and denying preliminary injunction as moot on December 6, 2023).

### ii.    *Prudential Mootness*

Even if this case were not *constitutionally* moot at the instant point in time, the court would find it appropriately viewed as prudentially moot. "The doctrine of prudential mootness permits a court to dismiss an [action] not technically moot if circumstances have changed since the beginning of litigation that forestall any occasion for meaningful relief." *Deutsche Bank Nat. Tr. Co. v. F.D.I.C.*, 744 F.3d 1124, 1135 (9th Cir. 2014) (quoting *Hunt v. Imperial Merchant Servs., Inc.*, 560 F.3d 1137, 1142 (9th Cir. 2009)). Nearly every Circuit has adopted the doctrine in some form.[10] *See People Not Politicians Oregon v. Clarno*, 826 F. App'x 581, 587 n.2 (9th

---

[9] It is also notable that the Magistrate Judge in *Koppel* issued his recommendation that the court deny the plaintiff's preliminary injunction as moot, and the District Judge accepted that recommendation, approximately two weeks prior to the date of the hearing held on this matter.

[10] The Ninth Circuit has observed it has not applied the doctrine on appeal outside the context of the disposition of assets in bankruptcy. *See Maldonado v. Lynch*, 786 F.3d 1155, 1161 n.5 (9th Cir. 2015) (declining to apply prudential mootness doctrine where the plaintiff, if successful, "will obtain meaningful relief" while noting "we have not adopted prudential mootness *per se*" and "have applied prudential mootness only in the bankruptcy context"). That stated, "courts within the Ninth Circuit have consistently held that prudential mootness is a viable doctrine," *see Rainey v. Fed. Deposit Ins. Corp.*, 2011 WL 13273076, at *6 (C.D. Cal. Sept. 28, 2011) (collecting cases including *In re Nelson*, 391 B.R. 437, 443 (B.A.P. 9th Cir. 2008)), and several Ninth Circuit judges have urged broader application of the doctrine, *see Maldonado*,

1    Cir. 2020) (Nelson, J., dissenting) (collecting cases from the First, Second, Third,

2    Fourth, Fifth, Sixth, Tenth, Eleventh, and D.C. Circuits); *Ali v. Cangemi*, 419 F.3d

3    722, 724 (8th Cir. 2005) (en banc) (concluding application for habeas corpus was

4    prudentially moot without addressing mootness under Article III).  Prudential

5    mootness, "[t]he cousin of the mootness doctrine, in its strict Article III sense, is a

6    melange of doctrines relating to the court's discretion in matters of remedy and

7    judicial administration." *Ali*, 419 F.3d at 724 (quoting *Chamber of Commerce v.*

8    *United States Dep't of Energy*, 627 F.2d 289, 291 (D.C. Cir. 1980)); *see also S. Utah*

9    *Wilderness All. v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997) ("In some circumstances,

10   a controversy, though not moot in the strict Article III sense, is 'so attenuated that

11   considerations of prudence and comity for coordinate branches of government counsel

12   the court to stay its hand, and to withhold relief it has the power to grant.') (quoting

13   *Chamber of Commerce*, 627 F.2d at 291).

14        As noted, Plaintiff withdrew her application and is effectively unable to refile

15   within a period of time such that it would be processed before the SB 2 becomes

16   effective eleven days from the hearing on this matter and four from the date of this

17   order.  In these circumstances, the court is unable to find a preliminary injunction

18   enjoining the imminently obsolete "good moral character" requirement will afford

19   Plaintiff any meaningful relief with respect to a CCW application she withdrew, had

20   yet to refile as of the hearing on this matter, and (as a practical matter) cannot refile

21   prior to the effective date of SB 2's new framework for CCW licensing.  Accordingly,

22   to the extent this case is not strictly constitutionally moot, it is prudentially so.  *See*

23   *Deutsche Bank*, 744 F.3d at 1135 (stating a case is prudentially moot "if

24   circumstances have changed since the beginning of litigation that forestall any

25

26   _____

27   786 F.3d at 1165-66 (Gould, J., joined by Clifton, Ikuta, and N.R. Smith, JJ.,
     dissenting) (urging application of the prudential mootness doctrine); *Clarno*, 826 F.

28   App'x at 587 (Nelson, J., dissenting) (same).

1   occasion for meaningful relief") (cleaned up); *see also Smith*, 110 F.3d at 727 (noting

2   the doctrine "has particular applicability in cases, such as this one, where the relief

3   sought is an injunction against the government"); *cf.* 13B Charles Alan Wright, Arthur

4   R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3533.1 (3d ed., 2022

5   update) (noting it is "appropriate to invoke a prudential principle without confronting

6   the uncertain line between Article III and prudential grounds—if the court would

7   decline decision on the merits either way, there is no advantage in forcing the

8   constitutional issue").

9   **IV.   Disposition**

10        "Because [the motion for preliminary injunction] is moot, [the court] lack[s]

11   jurisdiction to consider its merits." *See Doe No. 1 v. Reed*, 697 F.3d 1235, 1241 (9th

12   Cir. 2012) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998)).

13   Accordingly, the motion for preliminary injunction (Dkt. 22) is **DENIED AS MOOT**.

14   The complaint is **DISMISSED WITHOUT PREJUDICE**.  *See Hampton v. Pac. Inv.*

15   *Mgmt. Co. LLC*, 869 F.3d 844, 846 (9th Cir. 2017) (dismissals for lack of subject

16   matter jurisdiction are without prejudice "because a lack of jurisdiction deprives the

17   dismissing court of any power to adjudicate the merits of the case"); *Missouri ex rel.*

18   *Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) ("In general, dismissal for lack of

19   subject matter jurisdiction is without prejudice.").

20        The court next considers whether leave to amend is appropriate.  "As a general

21   rule, leave to amend should be freely given when justice so requires." *Lockheed*

22   *Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) (citations and

23   internal quotation marks omitted).  In determining whether to grant leave to amend,

24   courts analyze "five factors: (1) bad faith; (2) undue delay; (3) prejudice to the

25   opposing party; (4) futility of amendment; and (5) whether the plaintiff has previously

26   amended his complaint." *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004).

27   "However, each [factor] is not given equal weight," and "[f]utility of amendment can,

28

by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

In this case, given that SB 2 removes and replaces the "good moral character" requirement sought to be enjoined and Plaintiff withdrew her previously pending CCW application that served as the basis for the complaint in this matter, the court finds that amendment would be futile because there is no active Article III case or controversy at this time, i.e., the case is moot. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) ("A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'") (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982). Therefore, leave to amend is **DENIED**. *See Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015) ("Futility alone can justify a court's refusal to grant leave to amend.") (citation omitted); *Fish Nw. v. Thom*, 2021 WL 4744768, at *7 (W.D. Wash. Oct. 12, 2021) ("Granting leave to amend a moot claim is futile."); *see also Soil Retention Prod., Inc. v. Brentwood Indus., Inc.*, 521 F. Supp. 3d 929, 942 (S.D. Cal. 2021) (stating "a court need not grant leave to amend when permitting a plaintiff to amend would be an exercise in futility"). Separately, the motion to strike (Dkt. 34) is **DENIED** and the motion to seal (Dkt. 23) is **GRANTED**.



**IT IS SO ORDERED**.


Dated:  December 28, 2023

_____
Hon. Fred W. Slaughter
UNITED STATES DISTRICT JUDGE